In re REESE.

(District Court, M. D. Pennsylvania.  June 8, 1909.)

No. 1,168, in Bankruptcy.

BANKRUPTCY (§ 136*)—ORDER ON BANKRUPT TO TURN OVER PROPERTY—SUFFI-
CIENCY OF EVIDENCE.

To justify an order requiring a bankrupt to turn over property, the
proof that he has withheld property should be clear, and, where it de-
pends upon the comparative estimates of the value of a stock of goods at
different times, the discrepancy must be great and such as cannot be oth-
erwise explained.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

In Bankruptcy.  On certificate from W. L. Hill, referee, sur rule
on bankrupt to turn over certain property.

M. J. Martin and R. W. Rymer, for exceptions.
Ralph L. Levy, for trustee.

ARCHBALD, District Judge.  The bankruptcy in this case was
involuntary.  The respondent being under execution, a petition was
filed by creditors which he resisted, but which finally ended in an ad-
judication.  He was conducting a grocery store, buying and selling
for cash up to a few months before his failure.  Dropping at that
time the jobbing firms with whom he had been dealing before that,
he began to buy of new parties, and ran up a large indebtedness on
credit, contrary to his previous practice, obtaining in that way some
$9,000 worth of goods inside of four months, a large part of which,
it is claimed, is unaccounted for.  Charging that he withholds the
proceeds of sales during this time not applied to his debts or his per-
sonal and store expenses, a petition was filed by his trustee to compel
him to turn over this money, which the referee sustained to the ex-
tent of $2,500.  This amount was derived by charging the bankrupt
with the stock which he was supposed to have on hand on December
1, 1907, the date taken for the reckoning, together with his purchases
from then on as shown by his bills and invoices, and crediting there-
on the value of the goods which he had when he failed, as well as
the money realized from sales which was paid out meantime.  There
can be no just criticisms of the course so pursued nor the result ob-
tained, provided only the figures taken can be relied on.  The referee
has evidently endeavored to be conservative and fair to the bank-
rupt in his estimates, but, as shown by the evidence taken since the
hearing before him, the amounts with which the bankrupt is to be
charged must in any event be reduced by over $1,600 of credits of
which the referee had no knowledge, and it is only the balance that
is now in controversy.

The chance for error in any such calculation lies in the value as-
signed to the stock of the bankrupt at the time when the reckoning
began, as compared with what it is found to be when he goes into
bankruptcy.  The trustee contends that at both it was practically
the same in the present case, and the referee takes this view of it,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fixing the value in each instance at $4,000. The bankrupt claims that it was only $2,000 at the beginning of this period, and $6,000 at the end of it. This is a wide variance which is not easily disposed of. The uncertainty is due to the fact that the value at the first is wholly a matter of estimate. The referee relies on the statement of the bankrupt early in his examination, before there was any controversy, that he had on hand on January 1, 1908, about as large a stock as when he was closed up, and that it was the same on December 1, 1907, which is the first date taken, the value he fixes being $3,000 or $4,000. He subsequently corrected this, however, stating that the stock was very much depleted on December 1, having been allowed to run down on account of the panic that fall and the consequent falling off of business, and he amplified this at the hearing before the court on the exceptions. He also at the same time increased his estimate of the value of the stock when he was closed up to $6,000, the appraisers, as he says, who made it $3,500, having omitted many articles. The value of the stock at the time the store was closed is too fully attested, however, to be shaken, not only having been inventoried and valued by the appraisers, but also having been gone over carefully by the receiver, himself an experienced grocer, and others, all of whom substantially agree in their figures. And while these estimates are likely to have been low, in contemplation of the forced sale which was to follow, the value cannot have been anything like that given by the bankrupt. The referee is conservative when he fixes it at $4,000, which is about 15 per cent. above the appraisement, and that will be adhered to.

But, on the other hand, if $4,000 is to be taken as the value at the end, it is hardly fair to compare this, which was the result of a close and careful inventory, with the figures which he gave as the value at the beginning, which at best was nothing but a rough guess. Comparison is rather to be made between estimate and estimate, the value of the stock on December 1, according to his original statement, being $3,000 or $4,000, which as contrasted with $6,000, the value given to it by him at the end, makes a difference of $2,000 or $3,000. I am aware that at one point in his testimony he apparently makes the value at both times the same. But he corrects this afterwards, and notwithstanding the suspicion that the correction may have been for a purpose, coming after these proceedings were instituted, I am satisfied that the original statement was an inadvertence, and that the correction should be accepted. The stock is very likely, as he explains, to have been depleted and run down at the beginning of this period, for the reasons which he gives, which will also account for his otherwise large purchases immediately following that, and, on the basis of its being $4,000 at the end, as determined by the appraisement, it may well be regarded as not above $2,000 at the beginning, in accordance with the difference as estimated by the bankrupt between the one time and the other.

In one respect, however, the bankrupt has not been held for all that he should have been. It was shown by the evidence that he bought goods for cash of Short to the amount of $600, and from Pierce and others to about $200 further. And this money, having been allowed on the one side as cash paid out, should be charged on the other as so much more of goods received, to be accounted

for. Making this correction, the account with the bankrupt may be stated as follows:

The bankrupt is to be charged with:

Stock on hand December 1, 1907, say.............................. $ 2,000 00
Goods bought on credit, as per bills and invoices.................. 8,965 32
Goods bought for cash............................................ 800 00
                                                                  _____
    Total ...................................................... $11,765 32
                                                                  ==========

The bankrupt is to be credited with:

Stock turned over to trustee, say.............................. $ 4,000 00
Various cash credits as found by the referee.................... 5,949 72
Credits proved at hearing before the court not known to the ref-
eree ........................................................... 1,665 74
                                                                  _____
    Total ...................................................... $11,615 46

This shows a difference of $150 against the bankrupt, but must be regarded as practically balancing. Depending, as it does, on mere estimates on one side and the other, it cannot be expected to come out even. And it is only in any case of this kind, where there are great discrepancies which cannot be explained except on the basis that the bankrupt has made away with his property, that the matter can be laid hold of by a summary order. Being satisfied, therefore, that the bankrupt has cleared himself in the present instance of the charge made by the trustee of withholding and appropriating what belongs to his creditors,

The exceptions are sustained, and the petition of the trustee is dismissed.